UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------- }
MARIO RINALDI,                                          }
                                                        }
                          Plaintiff,                    }
                                                        }
        -against-                                       }
                                                        }
                                                        }
SCA LA GOUTTE, D'OR; SAS CH. & A.                       }
PRIEUR; PASCAL FERAT; JEAN JACQUES                      }
COUCHOU MEILLOT; HERVE SANCHEZ;                         }
and ETIENNE GODARD,                                     }
                                                        }
                          Defendants.                   }
--------------------------------------------------------- }

2016 Civ.__1901____ (__VSB__)

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, Mario Rinaldi ("Mr. Rinaldi"), by his attorneys, LeClairRyan, a Professional

Corporation, as and for his complaint against Defendants herein, alleges as follows:

### INTRODUCTION

1.      This is an action to enjoin the termination and of an open-ended, exclusive

agreement pursuant to which Mr. Rinaldi acted as the sales agent and brand ambassador for the

Defendants' Paul Goerg brand of champagne in the United States for over twenty years, and for

damages arising from that purported termination.

2.      Over the course of the last twenty-two years, Mr. Rinaldi invested substantial

amounts of time, effort, money, into developing and building Champagne Paul Goerg in the

United States.  As a result of this enormous investment of resources, the Paul Goerg brand has

grown from being virtually non-existent in the U.S. market, to being a major player, which can

be found on the wine lists of a number of exclusive New York City restaurants; is sold in high

end retail outlets; and is served in airline lounges and hotels, as well as at prestigious social,

charitable and diplomatic events in New York City and elsewhere in the United States.  The

17664407.2

brand's rising visibility and growing sales have increased its value dramatically, and has made it a substantial source of income for all parties herein.

3.      Over the last twenty-two years, Mr. Rinaldi has acted as the exclusive sales agent and brand ambassador of the Paul Goerg brand in the United States pursuant to an open-ended agreement with Defendant La Goutte, a French corporation that was created by several families who grow grapes and produced champagne in one of the most prestigious parts of the Champagne region of France, as a vehicle for selling champagne under the Paul Goerg name.

4.      In his capacity as the exclusive sales agent and brand ambassador, Mr. Rinaldi has been the primary driver of the growth and development of the Paul Goerg brand here in the United States, and has also played a major role in its increased success abroad.  Mr. Rinaldi has invested two million dollars of his own money promoting the brand, and has invested countless more hours since the mid-1990s interacting with wholesalers, retailers, restauranteurs, and event planners in New York City and elsewhere in the United States to enhance the brand's visibility and increase its sales.  These efforts have resulted in a substantial and valuable brand of Champagne that continues to grow rapidly within the market.

5.      After more than twenty-two years of strong growth and resulting profitability of the brand, the Defendants began making concerted efforts to prevent Mr. Rinaldi from successfully marketing and promoting the brand, thereby undermining the long-standing and successful exclusive relationship.  These efforts included pressing Mr. Rinaldi to accept onerous payment terms in order to obtain product for sale; sending representatives of La Goutte to the United States in an effort to deal directly with Mr. Rinaldi's customers and cut him out of sales; refusing to cooperate with Mr. Rinaldi's efforts to obtain investors for his business;  withholding royalty payments indisputably due to Mr. Rinaldi; seeking payments from Mr. Rinaldi far in

excess of any amounts due; and ultimately refusing to provide Mr. Rinaldi with sufficient product to supply existing and future customers.

6.     As a direct result of Defendants' improper conduct, Mr. Rinaldi has limited product left to fill many orders that he has received from wholesalers, retailers, and restauranteurs in the marketplace.  If he is unable to fill these orders, these customers, many of whom have been carefully cultivated and developed over the course of the last two decades, will have no choice but to seek alternative product through other avenues.  Should that happen, Mr. Rinaldi in turn will have no choice but effectively to shut down, thereby losing the longstanding, highly profitable business that has been his life's work, destroying the goodwill he has created, and erasing entirely the benefit of his enormous investment of time, effort, and money over a period of several years.

7.     By this action, Mr. Rinaldi seeks an injunction preventing Defendants from destroying Mr. Rinaldi's business by improperly terminating this exclusive relationship and otherwise breaching their obligations to him by removing him from future sales, and compelling Defendants to resume shipments of champagne to Mr. Rinaldi immediately.  In addition, he seeks damages from Defendants to compensate him for the injuries he has already suffered as a result of their wrongful actions.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction, insofar as this is a civil action for damages and equitable relief, in which the matter in controversy exceeds the sum of $75,000.00, exclusive of interest, costs and attorneys' fees.   There is complete diversity of citizenship between the parties.  Mr. Rinaldi has dual citizenship and is a citizen of the State of New York, while each of the Defendants is a citizen of France.

17664407.2

9.     Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391(a)(b), because a substantial part of the events or admissions giving rise to Mr. Rinaldi's claims occurred in this District.

## THE PARTIES

10.     Mr. Rinaldi is an individual who currently resides in New York City.   For the last twenty-two years Mr. Rinaldi has been the exclusive sales agent and brand ambassador for Champagne Paul Goerg in the United States.

11.     On information and belief, Defendant La Goutte d'Or is a French corporation with its principal place of business in the Champagne region of France.   Also on information and belief, La Goutte owns the trademark for the Paul Goerg brand of champagne, and produces and bottles sparkling wine bearing the brand name for sales worldwide.

12.     On information and belief, Defendant Ch & A. Prieur is a French corporation with its principal place of business in the Champagne region of France. Also on information and belief, Ch & A. Prieur recently became involved in the management and oversight of Champagne Paul Goerg.

13.     On information and belief, Defendant Pascal Ferat is an individual living in the Champagne region of France, and is the President and a member of the Board of Directors of La Goutte.

14.     On information and belief, Defendant Jean Jacques Couchou Meillot is an individual living in the Champagne region of France, is the President of Ch. & A. Prieur, and is a member of the Board of Directors of La Goutte.

15.     On information and belief, Defendant Herve Sanchez is an individual living in the Champagne region of France, and is a member of the Board of Directors of La Goutte.

4

17664407.2

16.     On information and belief, Defendant Etienne Godard is an individual living in the Champagne region of France, is the Sales and Marketing Director for Champagne Paul Goerg, and is a member of the Board of Directors of La Goutte.

## BACKGROUND

### The Champagne Region and Paul Goerg

17.     Champagne is a sparkling wine produced in the Champagne region of France, which is located approximately ninety miles northeast of Paris.   Over the years, champagne has become associated with luxury, high culture, and celebration, which has increased its popularity throughout the world and in the United States.

18.     Paul Goerg is a Champagne house located in the Cote des Blancs area of Champagne.  Cotes des Blancs is  well known for producing excellent Chardonnay – one of the principal grapes used in Champagne.  Champagnes sold under the Paul Goerg brand are produced in the region by an association of seven families who collectively own and cultivate approximately 300 acres of Premier and Grand Cru vineyards – grapes recognized for their superior quality – and who operate through the corporate entity La Goutte.

### Mr. Rinaldi Establishes and Builds the Paul Goerg Brand in the United States

19.     Mr. Rinaldi was born in Paris, France, and spent his formative years living in the Champagne region.  He attended college in the United States, before returning to France and working for a gastronomic publication, and in the wine trade.   In 1992, Mr. Rinaldi came back to the United States, where he worked in marketing for another champagne brand.

20.     In 1994, Mr. Rinaldi was asked by the families promoting the Paul Goerg Champagne brand, including certain of the Defendants, to assume responsibility for the marketing, promoting, sales and growth of Champagne Paul Goerg in the United States.  At that

5

time, Paul Goerg was essentially unknown here, having no distribution whatsoever in the United States. However, given that the champagne was made from grapes taken from Grand Cru and Premier Cru vineyards in Champagne and thus was a product of the best grapes and soil in the region, Mr. Rinaldi recognized the tremendous potential for the brand. Defendants repeatedly assured Mr. Rinaldi that he would be the exclusive sales agent and brand ambassador of the Paul Goerg brand in the United States, would take responsibility for identifying and cultivating customers, and would be compensated for his efforts in building the brand.

21.     Based on Defendants' promises and assurances, as well as the parties' agreement, Mr. Rinaldi returned to the United States in 1994, settling in New York City, and began his tireless effort to build and develop the Champagne Paul Goerg brand, as its brand ambassador and exclusive sales agent. This undertaking involved a substantial and steady investment of financial and other resources over an extended period, including extensive travel, as well as preparing marketing events and promotional materials, much of which was paid for out of Mr. Rinaldi's own pocket. Mr. Rinaldi worked tirelessly to develop customers for the brand in all segments of the market, including wholesalers, retailers, airlines, embassies, and restaurants.

22.     Over the course of his twenty-two years building and developing the brand, Mr. Rinaldi endeavored endlessly to increase the profile of Champagne Paul Goerg. This included aggressively working on developing a strong network of sales and distribution channels. Mr. Rinaldi identified an importer for the brand, as well as distributors in various markets. He also obtained a solicitor's license, which enabled him to deal directly with wine retailers, and became known to many of the top chefs and sommeliers at some of the best restaurants in New York City, including Jean Georges; L'Espinesse; Petrossian; Per Se; Alain Ducasse; Aquavit; Spice

17664407.2

Market; Bouley; Buddha Bar; Da Silvano; Cello; La Goutte; BLT; Waverly Inn, and many others.

23.     In addition, Mr. Rinaldi established relationships with several leading hotels in New York, including the Plaza, the Mark, the Mandarin Oriental, the St. Regis, the Regency, and the Four Seasons.  He also established relationships with event planners and others who would organize or host private social or charitable events in New York City and elsewhere at which Champagne Paul Georg was served.  This included staffs and high ranking officials at various foreign embassies.  All of these relationships were developed through long hours and many meetings and events over the course of many years.

24.     Building on his efforts to grow the brand in New York City, Mr. Rinaldi traveled further afield within the United States to find new customers.   This included developing relationships in New Jersey; Pennsylvania; Texas; California; Illinois; and the Midwest. Establishing the brand in each of these markets required further substantial outlays of cash and other resources on the part of Mr. Rinaldi.  However, in each of these markets, customers for the brand were secured, and sales grew correspondingly.

25.     While not formally part of his obligations as the U.S. sales agent and brand ambassador, Mr. Rinaldi also established critical accounts overseas, such as at Jean-Georges in Paris, the Cran Ambassador Hotel in Switzerland, and Bar & Books in Prague.  He also opened doors for the brand in Hong Kong, Japan, India, Russia, Mexico, Pacific Islands, the United Kingdom and Monaco.

26.     During the twenty-two years that Mr. Rinaldi represented the Paul Goerg brand in the United States, no written contract between Mr. Rinaldi and any of the Defendants existed. However, the parties had a clear, concrete, and detailed agreement regarding the manner in

7

which their relationship would operate.  This included an agreement on royalties that Mr. Rinaldi

would receive for purchases of product from La Gouette for ultimate sale to the retail outlets;

agreement regarding the method of payment for such product; and agreement regarding how

product would be marketed.  With respect to payment terms, Mr. Rinaldi purchased product on a

"consignment" basis.  Thus, product would be shipped to Mr. Rinaldi, and upon his selling

product to his customers, payment for the product would be made to La Goutte.

27.     The brand's growth inured to the benefit of its ownership group, including each of

the Defendants, as well as to Mr. Rinaldi.  As Mr. Rinaldi built the brand, he kept the Defendants

informed of his efforts and progress.

**Defendants Take Steps to Undermine the Exclusive Relationship**

28.     The system agreed to by the parties continued successfully up until early 2014.

During that time, Mr. Rinaldi invested approximately two million dollars of his own money into

the growth of the brand.   He became well known in social, charitable, and culinary circles in

New York City and beyond, and sales continued to grow steadily, excepting only periods, such

as 2008-2009, where there was a severe recession in sales of luxury goods in the United States.

By early 2014, sales of the brand in the U.S. were generating at least five million dollars in

revenue.

29.     Beginning in early 2014, the parties' relationship began to change.  La Goutte

hired a new managing director and head winemaker, Jean-Phillipe Moulin, who previously had

worked at a competitor, Champagne Ruinart, and who began a concerted effort to alter

unilaterally the terms of the exclusive relationship, much to Mr. Rinaldi's detriment.  These

changes included Defendants determining that they would no longer sell wine to Mr. Rinaldi on

a consignment basis, as was the arrangement throughout the twenty-two year history of this

relationship.  Instead, Defendants now insisted on immediate payment for product delivered.  This would create a substantial hardship for Mr. Rinaldi, given that it would require him to lay out substantial cash for the product before making sales and therefore obtaining payment from its customers.

30.     Also in early 2014, Defendants informed Mr. Rinaldi that they believed that Mr. Rinaldi owed substantial amounts to La Goutte as payment for product that previously had been delivered.  In fact, this was not the case.

31.     During 2011 and 2012, Mr. Rinaldi paid approximately $850,000 to La Goutte. At no time did La Goutte ever provide an accounting of the use of those funds, match the payments with open invoices, or explain the exchange rate utilized in determining the amounts owed.  The exchange rate utilized was particularly significant, given that Mr. Rinaldi was invoiced in euros but paid invoices in dollars, and there were substantial fluctuations in the exchange rate during this time period.

32.     In addition, Mr. Rinaldi was, at the time, owed substantial royalties by La Goutte arising from previous sales of product.  Moreover, a substantial amount of champagne that Mr. Rinaldi had received from La Goutte was not sold to customers, but rather was used for promotional and marketing purposes, and thus was not properly invoiced.  As a result of all of these factors, Mr. Rinaldi did not owe the sums claimed by Defendants, and there was no clear picture of what, if anything, actually was owed.  Nevertheless, Defendants provided no clarity on these points, despite Mr. Rinaldi's repeated requests.

**The March 2015 Meeting**

33.     In March 2015, the parties met in the Champagne region to address their relationship.  After the meeting, Defendants created a document setting forth a number of

proposed changes to the relationship.  These included the new method of invoicing and paying for product before the Paul Goerg Champagne was sold, a plan for the submission of regular reports about activity in the market, and also a number of proposed changes to the manner in which the product should be marketed in the U.S.

34.     Mr. Rinaldi responded to Defendants' suggestions, noting that a number of them were simply inconsistent with the manner in which business was done in the U.S. and reflected a misunderstanding of the way the market in the U.S. worked.  At the same time he agreed to a number of suggested changes, including the suggestion about how invoicing and payment should handled going forward and about providing regular reports about his activities and the market more generally, which would include a significant amount of proprietary information.

35.     In light of Defendants' demand that the parties abandon a consignment system for payments, Mr. Rinaldi expressed a desire to set up a new corporate entity to act as the sales representative of Champagne Paul Goerg in the U.S., and to obtain outside capital for this company, which would enable it not only to better manage payments for product, but also to expand its marketing and promotional activities and thereby further grow the brand.  To that end, an investment bank retained by Mr. Rinaldi sent a letter to La Goutte seeking information that would assist in assessing the investment.  La Goutte refused to provide any information, and told to Mr. Rinaldi that any efforts to obtain financing would need to be done without any cooperation from the company.

36.     Over the remainder of 2015, the relationship came under further pressure, as a result of Defendants' improper conduct and failure to cooperate with Mr. Rinaldi.  La Goutte continued to assert that Mr. Rinaldi was indebted to La Goutte in the amount of 390 thousand euros.  Once again, this supposed debt reflected overcharges due to the failure of the company to

take into account fluctuations between the euro and the dollar, as well as failure to take into account payments previously made, royalty payments indisputably owed to Mr. Rinaldi, and Paul Goerg Champagne that was used for promotional purposes.

37.     Defendants subsequently suggested that they would "forgive" two-hundred thousand euros of the amount claimed, which it would then attribute to "marketing."  Mr. Rinaldi objected, given not only the failure of Defendants to support their position, but also on the ground that Defendants had not provided such amount of funds towards his marketing efforts, and he did not wish to make any concession that Defendants had provided this support.

38.     Also during 2015, La Goutte personnel, and particularly Defendant Mr. Godard, began traveling to the United States and engaging directly with Mr. Rinaldi's customers and importer.  On information and belief, such efforts caused confusion among these parties, and damaged Mr. Rinaldi's reputation in the marketplace, and caused the loss of substantial goodwill.

**Defendants Refuse to Provide Product and Make Efforts to Usurp Mr. Rinaldi's Business**

39.     In December 2015 the disagreement between Mr. Rinaldi and Defendants about their relationship took an extreme turn.   Defendants indicated that they would provide no further product to Mr. Rinaldi, purportedly as a result of his failure to satisfy his payment obligation to La Goutte.  In February 2016, Defendants confirmed that they would not be making any further shipments.  Indeed, Defendants actually suggested that Mr. Rinaldi had somehow abandoned the parties' contract.

40.     On information and belief, Defendants decision to stop shipping product to Mr. Rinaldi was due entirely to their desire to remove him as exclusive sales agent and brand

17664407.2

ambassador, and to usurp for themselves the benefits of all of the work he had done building and developing Champagne Paul Goerg over the previous two decades.

41.     At present, Mr. Rinaldi has a limited amount of Champagne available for his customers, only sufficient to take him through the end of March 2016.  If Defendants do not resume shipments, Mr. Rinaldi will not be able to meet any of his orders after that time.

42.     A number of customers have reached out to Mr. Rinaldi seeking to secure champagne.  Certain of Mr. Rinaldi's customers also have expressed concerns about the ability to fulfill commitments to their own customers or to have adequate supply for events they are hosting.

43.     As an example, on March 2, 2016, the owner of one of Mr. Rinaldi's long-time customer, Glorious Foods, a well known catering facility in New York City, wrote Mr. Rinaldi inquiring about needed supply of Champagne Paul Goerg.  Concerns were expressed that the champagne would not be available to customers of Glorious Foods holding affairs at the facility.

44.     On March 5, 2016, Mr. Rinaldi was compelled to inform one of his customers in Wisconsin that he would be unable to provide champagne for a significant charitable event involving many of the leading chef's in that State – due again to Defendants' failure to supply him with product.

45.     On information and belief, while they have refused to sell Mr. Rinaldi any product, Defendants have actively sought to sell directly to the customers that he has developed over the years and to communicate to the market that Mr. Rinaldi is no longer acting as the exclusive sales agent and brand ambassador for Champagne Paul Goerg.

46.     On information and belief, La Goutte reached out to Mr. Rinaldi's Massachusetts distributor, and offered to sell champagne directly from the winery.

47.    On information and belief, Mr. Godard has actively solicited parties in the marketplace to purchase champagne without Mr. Rinaldi's involvement.  In fact, Mr. Godard recently attended the annual champagne tasting in Chicago run by the Champagne Bureau, the leading trade association for champagne houses here in the United States.  In the guide published for the event, Mr. Godard's name, rather than Mr. Rinaldi's, was listed as the contact for Champagne Paul Goerg.

48.    As a result of Defendants' refusal to live up to contractual obligations, other breaches of their obligations, and active efforts to displace and discredit Mr. Rinaldi in the marketplace, Mr. Rinaldi's business has suffered significant financial losses and, if the situation does not change soon, he will be forced to shut down, causing irreparable harm, loss of goodwill and reputation, and further financial losses.

### AS AND FOR A FIRST CLAIM
### (Breach of Contract – Against La Goutte)

49.    Plaintiff repeats, reiterates, and realleges each and every allegation set forth in paragraphs 1 through 48, with the same force and effect as if set forth at length herein.

50.    Mr. Rinaldi entered into a valid, enforceable agreement with La Goutte, whereby Mr. Rinaldi was granted the exclusive right to be the sales agent and brand ambassador for Champagne Paul Goerg in the United States.

51.    La Goutte had a contractual obligation to honor the exclusive agreement between the parties.  Despite Mr. Rinaldi's demand, La Goutte has failed to do so.

52.    La Goutte had a contractual obligation to timely fill Mr. Rinaldi's orders.  La Goutte breached that obligation starting in late-2015 by refusing, without justification, to fill any of Mr. Rinaldi's orders.

17664407.2

53.     In addition, La Goutte's improper acts of:  (i) effectively renouncing and terminating this agreement without justification; and (ii) attempting to sell products in the United States on its own and through the members of its Board constitute breaches of the agreement.

54.     Mr. Rinaldi fully performed all of his obligations under the agreement.

55.     As a result of the foregoing, Mr. Rinaldi has been damaged and demands judgment in the amount unknown at this time but believe to be in excess of $10,000,000.

## AS AND FOR A SECOND CLAIM
### (Breach of Fiduciary Duty – Against All Defendants)

56.     Plaintiff repeats, reiterates, and realleges each and every allegation set forth in paragraphs 1 through 55, with the same force and effect as if set forth herein in full.

57.     Defendants and Mr. Rinaldi were engaged in a relationship of trust throughout the 22 year history of their dealings.  Defendants' dominance over Mr. Rinaldi in the way in which Mr. Rinaldi was to operate as exclusive sales agent and brand ambassador for Champagne Paul Goerg in the United States created this fiduciary relationship.

58.     During the course of their relationship, Mr. Rinaldi furnished Defendants with confidential information, including, without limitation, information about the U.S. market, the identities of Mr. Rinaldi's customers, and the identities of critical customer decision makers, as well as volume and product specifications, timing of purchases, and confidential information about pricing, market share, payment terms and import logistics.

59.     By effectively terminating the parties' agreement without justification and by seeking to sell and distribute the product to Mr. Rinaldi's customers directly and to utilize the services of Mr. Rinaldi's importer and wholesalers, Defendants have breached their fiduciary duty to Mr. Rinaldi.

17664407.2

60.     Through its acts and omissions, Defendants have converted the goodwill established by Mr. Rinaldi in the New York market toward Champagne Paul Goerg and the sales and distribution networks established by Mr. Rinaldi to maximize the sales of Defendants' products without compensation to Mr. Rinaldi.

61.     The aforementioned acts by Defendants, as well as other acts, constitute breaches of fiduciary duty.

62.     As a result of the foregoing, Mr. Rinaldi's been damaged and demands judgment in an amount unknown at this time but believed to be in excess of $10,000,000.

**AS AND FOR A THIRD CLAIM**
**(Tortious Interference with Contractual Relations – Against All Defendants)**

63.     Plaintiff repeats, reiterates, and realleges each and every allegation set forth in paragraphs 1 through 62, as if set forth at length herein.

64.     Defendants each knew that customers purchasing Champagne Paul Goerg in the United States were customers of Mr. Rinaldi.

65.     Defendants were aware that the customers had agreements with Mr. Rinaldi to purchase products from Mr. Rinaldi.

66.     Defendants have intentionally sought to induce the customers to breach their various agreements with Mr. Rinaldi.

67.     The aforementioned acts by Defendants were performed without justification and/or excuse.

68.     Accordingly, all these acts constitute tortious interference with contractual relations.

69.     As a result of the foregoing Mr. Rinaldi has been damaged and demands judgment in an amount unknown at this time but believed to be in excess of $10,000,000.

15

## AS AND FOR A FOURTH CLAIM
### (Unfair Competition – Against All Defendants)

70.     Plaintiff repeats, reiterates, and realleges each and every allegation set forth in paragraphs 1 through 69, with the same force and effect as if set forth herein at length.

71.     Under the agreement Mr. Rinaldi was required to disclose the identity of his customers to Defendants as well as confidential information relating to those customers.

72.     Mr. Rinaldi spent substantial time, money and effort to develop this confidential information and under the agreement Mr. Rinaldi expended substantial time, money and effort to build and promote Mr. Rinaldi's customers goodwill toward the Champagne Paul Goerg brand.

73.     Once the goodwill was built up with Mr. Rinaldi's customers in New York and elsewhere in the United States over a period of twenty-two years, Defendants converted said goodwill and customer's accounts for their own use.

74.     Such acts, as well as other acts to be uncovered, constitute unfair competition.

75.     As a result of the foregoing, Mr. Rinaldi has been damaged and demands judgment in an amount unknown at this time, but believed to be in excess of $10,000,000.

## AS AND FOR A FIFTH CLAIM
### (Unjust Enrichment/Quantum Meruit – Against All Defendants)

76.     Plaintiff repeats, reiterates, and realleges each and every allegation set forth in paragraphs 1 through 75, with the same force and effect as if set forth at length herein.

77.     Under the agreement, Mr. Rinaldi was forced to disclose information about his customers to Defendants.

78.     Such information was confidential and/or proprietary to Mr. Rinaldi.

79.     Thereafter, under the agreement, Mr. Rinaldi expended substantial time, money and effort to build and promote goodwill toward Defendants' products and to establish a sales

16

17664407.2

distribution system to sell, distribute and promote the Champagne Paul Goerg and to have Mr.

Rinaldi's customers  accept and purchase Champagne Paul Goerg for use in their businesses and

establishments.

80.      This goodwill was in fact established through and as a result of the efforts of Mr.

Rinaldi.

81.      True and reasonable value of said services is at least $10,000,000.

82.      Defendants have accepted the benefits of such services, but have failed to live up

to their obligations to Mr. Rinaldi.

83.      As a result of the foregoing, Mr. Rinaldi has been damaged and demands

judgment in an amount unknown at this time, but believed to be in excess of 10,000,000.

### AS AND FOR A SIXTH CLAIM
### (Promissory Estoppel – Against All Defendants)

84.      Plaintiff  repeats, reiterates, and realleges each and every allegation set forth in

paragraphs 1 through 83, with the same force and effect as if set forth at length herein.

85.      During the course of the parties' relationship, Defendants made numerous

promises and provided numerous assurances to Mr. Rinaldi.

86.      Specifically, Defendants promised and assured Mr. Rinaldi that Mr. Rinaldi

would be the exclusive sales agent and brand ambassador of the Champagne Paul Goerg brand in

the United States for as long as the brand was being sold in the United States.

87.      Mr. Rinaldi detrimentally relied on Defendants' promises and assurances.  Based

on the parties' long standing relationship over the course of 22 years, such reliance was

reasonable and foreseeable.

88.      Mr. Rinaldi's detrimental reliance includes but is not limited to, the efforts

described above.

17664407.2

89.     As a result of the foregoing Mr. Rinaldi has been damaged and demands judgment in an amount unknown at this time but believed to be in excess of $10,000,000.

## AS AND FOR A SEVENTH CLAIM
### (Preliminary Injunction – Against All Defendants)

90.     Mr. Rinaldi repeats, reiterates and realleges each and every allegation set forth in paragraphs 1 through 89, with the same force and effect as if set forth at length herein.

91.     Defendants' refusal to provide product to Mr. Rinaldi and purported termination of the exclusive sales agreement between La Goutte and Mr. Rinaldi, threatens to cause irreparable harm.

92.     If Mr. Rinaldi is unable to provide product to his customers in a timely fashion, Mr. Rinaldi's business and goodwill will be destroyed.

93.     An injunction preventing Defendants from terminating the relationship and selling directly to Mr. Rinaldi's customers and compelling them to provide product to Mr. Rinaldi is needed to maintain the status quo during the pendency of this action.

94.     For the aforementioned reasons, Mr. Rinaldi seeks an order preliminary enjoining Defendants from taking steps to sell directly to his customers or failing to provide product during the pendency of this action, and an order directing Defendants to continue to supply product.

**WHEREFORE**, Mr. Rinaldi demands judgment against the Defendants as follows:

(a)     Directing that a preliminary injunction preventing Defendants from terminating the exclusive agreement with  Mr. Rinaldi and selling directly to his customers and mandating that Defendants continue to provide Mr. Rinaldi with product during the pendency of this action;

17664407.2

(b)     Awarding compensatory and consequential damages in the amount to be determined at trial but believe to be no less than $10,000,000, plus prejudgment interest; and an award of punitive damages in an amount to be determined at trial.

(c)     Directing an accounting of all profits wrongfully derived by Defendants by virtue of its breach of the agreement;

(d)     Imposing a constructive trust over all profits wrongfully derived by Defendants by virtue of their breach of the agreement;

(e)     Ordering the disgorgement of all profits wrongfully derived by Defendants by virtue of its breach of this agreement; and

(f)     Awarding Mr. Rinaldi his costs and disbursements in this action including reasonable attorney's fees and such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       March 14, 2016

            Respectfully,

            LECLAIRRYAN, A Professional Corporation

            By: _____

                 Thomas E. Butler
                 Thomas.Butler@leclairryan.com
                 Nicole A. Sullivan
                 Nicole.Sullivan@leclairryan.com
                 885 Third Avenue
                 Sixteenth Floor
                 New York, New York  10022
                 Telephone:  212-697-5555

                 *Attorneys for Plaintiff Mario Rinaldi*