```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                      :
MARIO RINALDI,                                        :
                                                      :
                                                      :
                          Plaintiff,                  :
                                                      :
              - against -                             :
                                                      :
                                                      :
SCA LA GOUTTE, D'OR, SAS CH. &                        :
A. PRIEUR,                                            :
                                                      :
                                                      :
                          Defendants.                 :
                                                      :
------------------------------------------------------X
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/9/2020
```

16-CV-1901 (VSB)

**OPINION & ORDER**

Appearances:

Thomas Edward Butler
Nicole Ann Sullivan
White and Williams LLP
New York, New York

*Counsel for Plaintiff*

Edward William Floyd
Floyd Zadkovich LLP
New York, New York

*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

Plaintiff Mario Rinaldi ("Plaintiff" or "Rinaldi") was the sales agent and brand ambassador for Defendants Paul Goerg champagne ("Goerg champagne") pursuant to the terms of an oral exclusive agreement. In this action Rinaldi seeks damages from Defendants SCA La Goutte, D'Or ("La Goutte"), and Sas. Ch. & A. Prieur ("Prieur") (collectively, "Defendants"), for breach of contract, breach of fiduciary duty, tortious interference with contractual relations, unfair competition, unjust enrichment, and promissory estoppel due to the purported termination

of that agreement.[1]

Because the Agreement between Plaintiff and Defendants as alleged falls outside the Statute of Frauds, Defendant's motion for judgment on the pleadings on Plaintiff's breach of contract claim is Denied.  However, Defendants' motion for judgment on the pleadings as to the claims for breach of fiduciary duty, unfair competition, unjust enrichment, and promissory estoppel is Granted because these claims are duplicative of Plaintiff's breach of contract claim, and Plaintiff has failed to allege an unconscionable injury.  Plaintiff's claim for tortious interference with contractual relations is also Denied, as Plaintiff fails to point to any specific contracts with third parties.

## I.     **<u>Background</u>**[2]

Plaintiff Mario Rinaldi began his employment with Defendant La Goutte—the corporate entity that sells Goerg champagne—in 1994.  (Compl. ¶¶ 20, 21.)[3]  He was hired to market, promote, sell, and grow Goerg champagne in the United States.  (*Id.*)  Plaintiff worked to develop the brand and increase the champagne's profits in the United States; these efforts included the expenditure of $2 million of Plaintiff's own money.  (*Id.* ¶ 4.)

Plaintiff did not have a written contract with La Goutte, but he alleges that the parties "had a clear, concrete, and detailed agreement regarding the manner in which their relationship would operate."  (*Id.* ¶ 26.)  This agreement included specific understandings regarding (1) the

---

[1] After I denied Rinaldi's motion for a preliminary injunction, (Doc. 28), the parties filed a stipulation dismissing Defendants Pascal Ferat, Jean Jacques Couchou Meillot, Herve Sanchez, and Etienne Godard from the action, (Doc. 38).

[2] The information in this section is drawn from Plaintiff's Complaint.  (Doc. 1.)  I assume Plaintiff's allegations to be true and draw all reasonable inferences in his favor for purposes of this motion.  *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994); *see also Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  However, my references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[3] "Compl." refers to Plaintiff's Complaint.  (Doc. 1.)

royalties Plaintiff would receive for purchases of the products by his customers, (2) the method of payment for the champagne, and (3) the marketing of Goerg champagne. (*Id.*) Regarding payment, Plaintiff asserts the champagne was sent to him on a consignment basis, and that he would pay La Goutte after he had sold the champagne. (*Id.*)

Plaintiff contends that this agreement operated fairly successfully until 2014. (*Id.* ¶ 28.) In early 2014, however, La Goutte began to alter the parties' understanding and raise issues, including, among other things, telling Plaintiff it would no longer sell champagne to Plaintiff on a consignment basis, and asserting that Plaintiff owed money for product previously delivered. (*Id.* ¶ 29). In order to implement these changes, Plaintiff suggested to Defendants that he could set up a new corporate entity to act as the sales agent and possible distributor for Goerg champagne. (*Id.* ¶ 35.) Defendants refused to help Plaintiff search for capital for this corporate entity and the plan to use it as a distributor of Goerg champagne. (*Id.*)

Throughout 2015 Defendants continued to assert that Plaintiff owed them money, which Plaintiff disputed. (*Id.* ¶¶ 31, 32, 36, 37.) Certain of Defendants also began to travel to the United States and sought to engage Plaintiff's customers without his consultation. (*Id.* ¶ 47.) In December 2015, Defendants informed Plaintiff they would no longer provide any champagne to him because of the money he owed. (*Id.* ¶ 39.) The refusal by Defendants to supply additional champagne has impacted Plaintiff's existing orders, and made him unable to take on new business opportunities from other customers who inquired about Goerg champagne. (*Id.* ¶¶ 41–42.) Defendants also contacted Plaintiff's existing customers and offered to sell them champagne directly without Plaintiff; effectively cutting Plaintiff out of the process. (*See id.* ¶ 45.)

3

## II.     Procedural History

Plaintiff filed his Complaint on March 14, 2016, (Doc. 1), and simultaneously sought a temporary restraining order to compel Defendants to continue shipping champagne to him, (Doc. 3). On March 15, 2016, I held an ex parte conference on Plaintiff's request for a temporary restraining order, but refused to enter a temporary restraining order at that time. (3-15-16 Tr. 8:4-11.)[4] At that conference, I scheduled a subsequent hearing for April 4, 2016, regarding Plaintiff's requested preliminary injunction. (*Id.* 8:9-11.) I issued Plaintiff's Order to Show Cause, but deleted the portions regarding the temporary restraining order. (Doc. 3.) Defendants filed their opposition on March 29, (Doc. 18), and Plaintiff filed his reply on April 1, (Doc. 20). I held a hearing on Plaintiff's motion for a preliminary injunction on April 4, 2016, during which time I extended the time for Defendants to answer the Complaint, directed the parties to meet and confer concerning Plaintiff's debt to Defendants, and directed the parties to return on April 20, 2016. (4-4-16 Tr. 52:8-56:3.)[5] During the hearing on April 20 I denied Plaintiff's motion for a preliminary injunction because "plaintiff [] failed to establish that he is likely to suffer irreparable injury in the absence of preliminary relief" and stated that I would issue a written decision setting forth in greater detail the basis for my decision.[6] (4-20-16 Tr. 17:24-18:4.)[7] On February 3, 2017, I issued a Memorandum and Order setting forth in greater detail the basis for my decision. (Doc. 53.) On May 18, 2016, Defendants filed an Answer with counterclaims against Rinaldi and a third party, USA Wine Imports, Inc ("USA Wine"). (Doc. 39.) On June 8,

---

[4] "3-15-16 Tr." refers to the transcript of the conference held on this matter on March 15, 2016. (Doc. 11.)

[5] "4-4-16 Tr." refers to the transcript of the conference held on this matter on April 4, 2016. (Doc. 26.)

[6] By Stipulation and Order filed on May 10, 2016 the parties agreed to dismiss this action pursuant to Fed. R. Civ.P. Rule 41 without prejudice as to Defendants Pascal Ferat, Jean Jacques Couchou Meillot, Herve Sanchez, and Etienne Godard. (Doc. 38.)

[7] "4-20-16 Tr." refers to the transcript of the conference held on this matter on April 20, 2016. (Doc. 33.)

2016, Rinaldi filed an answer to the counterclaims, (Doc. 44), and on June 27, 2016, USA Wine filed an answer to the counterclaims, (Doc. 46).  The counterclaims are not at issue in this motion.

On August 16, 2019, Defendants filed their motion for judgment on the pleadings, (Doc. 103), and declaration, (Doc. 105), and memorandum of law in support of that motion, (Doc. 106).[8]  Plaintiff filed his memorandum of law in opposition to the motion on August 2, 2019, (Doc. 102), and Defendants filed their reply on August 16, 2019, (Doc. 107).

### III. Legal Standard

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  In deciding a motion for judgment on the pleadings, a district court must "employ the same standard applicable to Rule 12(b)(6) motions to dismiss."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78 (2d Cir. 2015).  This means "[a]ccepting the non-moving party's allegations as true and viewing the facts in the light most favorable to that party," and granting judgment on the pleadings "if the moving party is entitled to judgment as a matter of law."  *Richards v. Select Ins. Co.*, 40 F. Supp. 2d 163, 165 (S.D.N.Y. 1999) (internal quotation marks omitted).  A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (quoting *Int' l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

---

[8] Each of these filings had been refiled at the direction if the Clerk of Court due to filing errors.

Under Rule 12(c), a party is entitled to judgment on the pleadings "only if it has established that no material issue of fact remains to be resolved." *Juster Assocs. v. City of Rutland, Vt.*, 901 F.2d 266, 269 (2d Cir. 1990) (internal quotation marks omitted); *see Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988) (noting that judgment on the pleadings "is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings"). "On a [Rule] 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)).[9]

## IV. Discussion

### A. *Breach of Contract*

Defendants argue that the oral contract entered into between the parties is barred by the Statute of Frauds because it could not be performed within one year. The Statute of Frauds "is designed to protect the parties and preserve the integrity of contractual agreements." *William J. Jenack Estate Appraisers & Auctioneers, Inc. v. Rabizadeh*, 22 N.Y.3d 470, 476 (2013). "Under the Statute of Frauds, to be enforceable, certain types of agreements cannot be oral; they must be in writing." *Dorfman v. Reffkin*, 144 A.D.3d 10, 15 (1st Dep't 2016). This requirement "is meant to guard against the peril of perjury[,] to prevent the enforcement of unfounded fraudulent

---

[9] In addressing the various causes of action both parties cite to New York law, without addressing whether New York law is applicable. "When sitting in diversity jurisdiction and determining New York state law claims, we must apply the law of New York as interpreted by the New York Court of Appeals." *Deutsche Bank Nat. Trust Co. v. Quicken Loans, Inc.*, 810 F.3d 861 (2d Cir. 2015) (internal quotation marks omitted)). By assuming New York law controls in their briefs, the parties have given "implied consent . . . []sufficient to establish choice of law." *Krumme v. Westpoint Stevens Inc.,* 238 F.3d 133, 138 (2d Cir. 2000) (quoting *Tehran-Berkeley Civil & Environmental Engineers v. Tippets-Abbett-McCarthy-Stratton*, 888 F.2d 239, 242 (2d Cir. 1989)). Accordingly, I find that New York Law is applicable to Plaintiff's claims.

claims"; "[i]n short, the purpose of the Statute of Frauds is simply to prevent a party from being held responsible, by oral, and perhaps false, testimony, for a contract that the party claims never to have made." *Rabizadeh*, 22 N.Y.3d at 476.

The Statue of Frauds, codified in New York General Obligations Law §5-701(a)(1), provides that:

> Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking . . . [b]y its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime.

"[C]ourts have generally been reluctant to give too broad an interpretation to this provision of the Statute and instead have limited it to those contracts only which by their very terms have absolutely no possibility in fact and law of full performance within one year." *D & N Boening, Inc. v. Kirsch Beverage*, 63 N.Y.2d 449 (1984); *Cron v. Hargro Fabrics*, Inc., 91 N.Y.2d 362, 366 (1998) ("As long as the agreement may be fairly and reasonably interpreted such that it may be performed within a year, the Statute of Frauds will not act as a bar however unexpected, unlikely, or even improbable that such performance will occur during that time frame.") (internal quotation marks omitted). "Full performance by all parties must be possible within a year to satisfy the Statute of Frauds." *Cron*, 91 N.Y.2d at 369. "A contract is not 'to be performed within a year' if it is terminable within that time only upon the breach of one of the parties." *Ohanian v. Avis Rent A Car System, Inc.*, 779 F.2d 101, 107 (2d Cir. 1985) (citing *Boening*, 63 N.Y.2d at 456.). In other words, "an oral contract that is terminable within a year only upon its breach . . . is barred by the statute [of frauds]." *Id.*

In his Complaint, Rinaldi alleges that the oral contract between Plaintiff and Defendants established him as "the exclusive agent and brand ambassador of the Champagne Paul Georg

7

brand in the United States for as long as the brand was being sold in the United States." (Compl. ¶ 86.) The parties each cite to *North Shore Bottling v. C. Schmidt & Sons, Inc.*, 22 N.Y.2d 171 (1968) and to *Beautiful Jewelers Private Limited v. Tiffany & Co.*, No. 06 Civ. 3085(KMW), 2007 WL 867202, at *3 (S.D.N.Y. Mar. 21, 2007), Plaintiff arguing that the facts here are analogous to the facts in *North Shore*, (Plf.'s Mem. 7– 8),[10] while Defendants argue the oral agreement here "was not an agreement where [they] possessed the option to discontinue at any time the activities upon which the agreement was conditioned", (Def. Mem. 8).[11]

In *North Shore*, the Court of Appeals of New York held that an oral contract which "contemplate[s] its possible termination by action" is considered to be a contract which can be performed within one year, and falls outside the Statute of Frauds. *North Shore Bottling Co.,* 22 N.Y.2d 176–77. Specifically, the Court of Appeals of New York held that an oral contract for the exclusive distribution of beer in Queens County "[f]or as long as [Plaintiff] sold beer in the New York metropolitan area" did not fall under the Statute of Frauds as Defendant could have discontinued beer sales in the New York area under the contract, which would amount to performance within one year. *Id.* at 191. Similarly, in *Beautiful Jewelers*, Judge Kimba Wood relied on *North Shore Bottling* in holding that the oral contract at issue in that case, which was to "last as long as [Defendant] sold products to India," could have been performed within one year if Defendant chose to discontinue sales to India. 2007 WL 867202 at *1, *3.

The same analysis applies here. According to the Complaint, although the parties may have expected the agreement to last a long time, they contemplated performance within one year

---

[10] "Plf.'s Mem." refers to Plaintiff Mario Rinaldi's Opposition to Defendants' Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(C). (Doc. 102.)

[11] "Def. Mem." refers to the Defendants' Memorandum of Law in Support of its Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c) Against Plaintiff on all Claims set Forth in Plaintiff's Complaint. (Doc. 106.) The Clerk's Office had initially rejected this filing as improperly filed, (Doc. 97), and directed Defendants' counsel to refile it.

8

by including the contingency "for as long as the brand was being sold in the United States." (Compl. ¶ 86); *North Shore Bottling*, 22 N.Y. 2d at 176. Thus, the contract could be terminated by Defendants at any time by stopping sales in the United States, which would satisfy the Statute of Frauds as the contract could have been performed within one year. *See id.*; *Beautiful Jewelers,* 2007 WL 867202, at *3 (S.D.N.Y. Mar. 21, 2007).

      Defendants' argument that the language "for as long as the brand was being sold in the United States," found only in paragraph 86 of the Complaint, does not apply to any other cause of action other than promissory estoppel, and "does not insert the operative contingency into the terms of the contract as pled", (Def. Mem. 11), is not supported by the facts or the law. A complaint "should be read as a whole, not parsed piece by piece. . ." *Pension Ben. Guar. Corp. ex rel. v. St. Vincent Catholic Medical Center S Retirement Plan*, 712 F.3 705, 731 (2d Cir. 2013) (Straub, J. dissenting in part) (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009); *see also Yoder v. Orthomolecular Nutrition Institute, Inc.*, 751 F.2d 555, 562 (2d Cir. 1985) ("It is elementary that, on a motion to dismiss, a complaint must be read as a whole. . . ") Defendants do not cite to any case which holds that the allegations made in one section of a complaint are irrelevant or inapplicable to other portions of the complaint when considering a motion for judgment on the pleadings.

      Moreover, it is clear that Plaintiff's contention that the contract included the disputed provision creates an issue of fact as to the provisions of the oral contract, which precludes dismissal of the Complaint. *See Johnson v. St. Barnabus Nursing Home*, 368 F. App'x 246, 248 (2d Cir. 2010) ("[A] court must accept the allegations contained in the complaint as true . . . and deny the motion unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." (internal quotation marks omitted).) In

other words, the law requires that at this stage of the case I cannot accept the interpretation of the oral contract proffered by Defendants and dismiss the case.

### B. *Breach of Fiduciary Duty*

To establish a breach of fiduciary duty under New York law, a plaintiff must prove "the existence of a fiduciary relationship, misconduct by the defendant, and damages directly caused by the defendant's misconduct." *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 204 (S.D.N.Y. 2008). A "fiduciary relationship arises between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Oddo Asset Mgmt. v. Barclays Bank PLC*, 19 N.Y.3d 584, 592–93 (2012). Such a relationship exists where "influence has been acquired and abused, [and] confidence has been reposed and betrayed," *In re Refco Inc. Sec. Litig.*, 826 F. Supp. 2d 478, 502–03 (S.D.N.Y. 2011) (quoting *Penato v. George*, 383 N.Y.S.2d 900, 904–05 (App. Div. 1976)), or, put the opposite way, where one party "reposes confidence in another and reasonably relies on the other's superior expertise or knowledge," *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 191 (S.D.N.Y. 2011). An "arms-length business relationship" will not create a fiduciary obligation. *Id.* (quoting *WIT Holding Corp. v. Klein,* 724 N.Y.S.2d 66, 68 (2d Dept. 2001)). "At the heart of the fiduciary relationship lies reliance, and de facto control and dominance." *United States v Chestman*, 947 F.2d 551, 568 (2d Cir. 1991).

Rinaldi fails to allege a fiduciary duty owed to him by Defendants. Instead, Rinaldi alleges he was "under a duty to act for or to give advice for the benefit of" Defendants regarding the champagne market in the United States, *see Oddo Asset Mgmt.* 19 N.Y.3d at 592–93, and that he relied upon Defendants to fill his orders. Rinaldi has it backwards, since Rinaldi had the "superior expertise and knowledge" of the champagne market in the United States, *see Ellington*

*Credit Fund*, 837 F. Supp 2d at 191, not Defendants. It was Rinaldi that Defendants relied upon for sales of their product and to cultivate and expand their brand in the United States, not the other way around. Rinaldi's claim that Defendants were in a position of dominance and that he relied upon them relates solely to the supply of the product Rinaldi was selling on their behalf. A fiduciary duty is "grounded in a higher level of trust than normally present in the marketplace between those involved in arm's length business transactions." *EBC I, Inc. v. Goldman Sachs & Co.*, 5 N.Y.3d 11, 19 (2005). Rinaldi's "trust" in Defendants is purely to fill the orders he places, which is the trust any distributor in an arm's length business transaction would place in the supplier. Instead, it was Defendants who trusted Rinaldi to grow their brand, to cultivate relationships and create a market for their product.[12]

Even if I were to find that Defendants owed Rinaldi a fiduciary duty, Rinaldi's claim for breach of fiduciary is duplicative of his breach of contract claim. A cause of action for breach of fiduciary duty that duplicates a breach of contract claim must be dismissed, unless the conduct is independent of the contract. *Bullmore v. Ernst & Young Cayman Islands*, 846 N.Y.S.2d 145, 148 (App. Div. 2007). The mere "existence of a contract between the parties defining the broad contours of their relationship does not preclude a finding of a fiduciary relationship." *St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d 144, 166–67 (E.D.N.Y. 2010). To the contrary, "if a contract establishes a relationship of trust and confidence between the parties[,] then a fiduciary duty arises from the contract which is independent of the contractual obligation." *Id.* (quoting *Lumbermens Mutual Casualty Co. v. Franey Muha Alliant Ins. Servs.*, 388 F .Supp. 2d 292, 305 (S.D.N.Y.2005)). Thus, the same conduct that "constitute[s] the breach of a contractual

---

[12] My comments here should not be construed as a finding that Rinaldi had a fiduciary duty to Defendants and I make no such finding.

obligation may also constitute the breach of a duty arising out of the relationship created by contract" so long as it is "independent of the contract itself." *Id.* (quoting *Mandelblatt v. Devon Stores, Inc.*, 521 N.Y.S.2d 672, 676 (1st Dep't 1987) (collecting cases)); *see also Bullmore*, 846 N.Y.S.2d at 148 ("Professionals such as investment advisors, who owe fiduciary duties to their clients, "may be subject to tort liability for failure to exercise reasonable care, irrespective of their contractual duties," since in "these instances, it is policy, not the parties' contract, that gives rise to a duty of care").

Here, the allegations supporting Rinaldi's breach of contract claim encompass his claim for breach of fiduciary duty. In his cause of action for breach of contract, Rinaldi claims the Defendants breached the contract by "attempting to sell products in the United States on its own and through members of its Board," and by breaching their "contractual obligation to honor the exclusive agreement between the parties." (Compl. ¶¶ 51, 53.) Similarly, the breach of fiduciary duty claim includes the allegation that Defendants breached their duty to Rinaldi by "terminating the parties' agreement without justification . . . [and] seeking to sell and distribute the product to Mr. Rinaldi's customers directly." (Compl. ¶ 59.) These allegations are duplicative of the breach of contract allegations, and do not support a separate breach of duty that is "independent of the contract itself." *Bolton,* 757 F. Supp 2d at 166–67.

### C. *Tortious Interference with Contractual Relations*

"A claim of tortious interference requires proof of (1) the existence of a valid contract between plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional procuring of the breach, and (4) damages." *Foster v. Churchill*, 665 N.E.2d 153, 156 (N.Y. 1996); *see also Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006). A tortious interference claim requires a breach a contract between the plaintiff and the

third party. *NBT Bancorp Inc. v. Fleet/Norstar Fin. Grp., Inc.*, 664 N.E.2d 492, 495 (N.Y. 1996).

Rinaldi's claim for tortious interference with contractual relations fails because he does not allege any specific contracts with third parties. *See Ho Myung Moolsan Co., Ltd. v. Manitou Mineral Water, Inc.*, 665 F. Supp. 2d 239, 255 (S.D.N.Y. 2009). Rinaldi states that he "established relationships" with hotels and restaurants who would order and serve Defendants' champagne, that he "established accounts" with overseas clients, and that he has commitments to fill orders for some of these customers. (Compl. ¶¶ 22, 23, 24, 25, 41, 42.) Establishing relationships and accounts are not contracts, and Rinadli never identifies or mentions any contract with these third parties. "[M]erely alleg[ing]" the existence of relationships and accounts or the bare assertion of the existence of "agreements" with customers is "insufficient" to state a claim for tortious interference with contractual relations, *Plasticware, LLC v. Flint Hills Resources, LP*, 852 F. Supp. 2d 398, 404 (S.D.N.Y. 2012) (finding that a plaintiff who "merely has alleged that it has 'agreements' with its customers" "is insufficient" to state a claim of tortious interference with contractual relations). Accordingly, Rinaldi's claim for tortious interference with contractual relations must be dismissed.

### D. *Unfair Competition*

Rinaldi's unfair competition claim is also duplicative of his breach of contract claim and must be dismissed. Under New York law, where a plaintiff and defendant are parties to a contract, an action in tort cannot lie unless the plaintiff alleges "that the defendant breached a duty independent of its duties under the contract" by going "beyond a mere breach of the contract and act[ing] in such a way that a trier of fact [can] infer that it willfully intended to harm the plaintiff." *Carvel Corp. v. Noonan*, 350 F.3d 6, 16 (2d Cir. 2003); *see also Opternative, Inc.*

13

*v. JAND, Inc.*, No. 17 Civ. 6936 (JFK), 2019 WL 624853, at *3 (S.D.N.Y. Feb. 13, 2019). Here, Plaintiff has not provided sufficient allegations of Defendants' tortious conduct independent of the breach of contract to support a claim of unfair competition. In addition, Rinaldi's claims of conversion of goodwill and customer accounts, (Compl. ¶ 73), are unsubstantiated and based on speculation, (*See* Compl. ¶¶ 45, 46, 47), and are insufficient to support a claim for unfair competition.

### E. *Unjust Enrichment*[13]

"The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004). Where the existence of an enforceable contract is disputed, "Rule 8(d)(2) of the Federal Rule of Civil Procedure permits a plaintiff to plead claims for breach of contract and, in the alternative, claims for quantum meruit and unjust enrichment." *Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 243 (S.D.N.Y. 2013). However, "where there is a valid and enforceable contract between the parties, and the subject matter of the unjust enrichment claim is covered by the contract," a court must dismiss the unjust enrichment claim. *ImagePoint, Inc. v. JPMorgan Chase Bank, Nat. Ass'n*, 27 F. Supp. 3d 494, 516 (S.D.N.Y. 2014) (internal quotation marks omitted); *see also Maryland Cas. Co. v. W.R. Grace & Co.*, 218 F.3d 204, 212 (2d Cir. 2000) ("The notion of unjust enrichment applies where

---

[13] Plaintiff's Complaint refers to this cause of action as unjust enrichment/quantum meruit. However, in his memorandum of law in opposition to this motion, Rinaldi only cites to the standard for unjust enrichment, and repeatedly refers to the cause of action as "unjust enrichment/quantum meruit." I, therefore, address these claims as a cause of action under unjust enrichment. In any event, whether Plaintiff's claim could be viewed as one for quantum meruit it would still be duplicative of his contract claim subject to dismissal. *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) ("New York law does not permit recovery in quantum meruit, however, if the parties have a valid, enforceable contract that governs the same subject matter as the quantum meruit claim.")

there is no contract between the parties . . . ."); *Opternative, Inc. v. Jand, Inc.*, No. 17 Civ. 6936 (JFK), 2018 WL 3747171, at *7 (S.D.N.Y. Aug. 7, 2018) ("Under New York law, the existence of a valid contract typically bars recovery based on the quasi-contract theory of unjust enrichment.").

The parties agree that there is a valid and enforceable contract. (Compl.¶ 20; Answer[14] ¶ 20.) Plaintiff's unjust enrichment claims, therefore, cannot be pleaded in the alternative as they are covered by the contract, and must be dismissed. *See ImagePoint Inc.*, 27 F. Supp. 3d at 516.

### F. *Promissory Estoppel*

"Promissory estoppel is a narrow doctrine designed to enforce a contract in the interest of justice where some contract formation problem would otherwise prevent enforcement—for example, the Statute of Frauds or a failure of consideration." *Gas Natural, Inc., v. Iberdrola, S.A.*, 33 F. Supp. 3d 373, 385 (S.D.N.Y. 2014) (quoting *BNP Paribas Mortgage Corp. v. Bank of America N.A.*, 949 F. Supp. 2d 486, 516 (S.D.N.Y. 2013)); *see also Merex A.G. v. Fairchild Weston Systems, Inc.*, 29 F.3d 821, 824 (2d Cir. 1994). If the promissory estoppel claim is not meant to overcome a defense of statute of frauds or any other contract formation issue, the promissory estoppel claim should be dismissed as duplicative of the breach of contract claim. *See Gas Natural*, 33 F. Supp. 3d at 386. However, "[w]hen promissory estoppel is asserted to overcome a defense based on the Statute of Frauds, an 'unconscionable' injury is required under New York law." *Cachillo v. Insmed, Inc.*, 551 F. App'x 592, 595 (2d. Cir. 2014). "An unconscionable injury is one beyond that which flows naturally (expectation damages) from the non-performance of the unenforceable agreement." *United Magazine Co., Inc., v. Curtis Circulation Co.*, 279 F. App'x 14, 18 (2d Cir. 2008) (internal quotation marks omitted). Rinaldi

---

[14] "Answer" refers to Defendants' Answer with Counterclaims filed on May 18, 2016. (Doc. 39.)

has not alleged any such unconscionable injury, rather Rinaldi's claim is nothing more than a standard breach of contract.

### V. Conclusion

For the foregoing reasons, Defendants' motion for judgment on the pleadings is DENIED as to Plaintiff's claim for breach of contract, and is GRANTED as to Plaintiff's claims for breach of fiduciary duty, tortious interference with contractual relations, unfair competition, unjust enrichment, and promissory estoppel.  Accordingly, Plaintiff's claims for breach of fiduciary duty, tortious interference with contractual relations, unfair competition, unjust enrichment, and promissory estoppel are DISMISSED.

The Clerk's Office is respectfully directed to terminate the motion at Document 103.

SO ORDERED.

Dated: September 9, 2020
      New York, New York

Vernon S. Broderick
United States District Judge