```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/30/2021
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
                                                                     :
MARIO RINALDI,                                  :
                                                        :
                          Plaintiff,  :
                                                        :         16-CV-1901 (VSB)
             - against -                   :
                                                         :        **OPINION & ORDER**
SCA LA GOUTTE, D'OR, SAS CH. &  :
A. PRIEUR,                                        :
                                                        :
                            Defendants.  :
                                                        :
----------------------------------------------------------X

Appearances:

Thomas Edward Butler
Nicole Ann Sullivan
White and Williams LLP
New York, New York

*Counsel for Plaintiff*

Edward William Floyd
Eva-Maria Mayer
Zeiler Floyd Zadkovich
New York, New York

*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

       In anticipation of trial in this breach of contract case, Plaintiff Mario Rinaldi ("Plaintiff" or "Rinaldi") and Defendants and Counterclaim Plaintiffs Defendants SCA La Goutte, D'Or ("La Goutte"), and Sas. Ch. & A. Prieur ("Prieur") (collectively, "Defendants") filed six motions *in limine*. Below are my rulings on three of the motions. I will consider the remaining motions at the final pre-trial conference. For the reasons stated below and on the record on July 15, 2021, Rinaldi's first motion *in limine* is DENIED; Defendants' motion to exclude expert Pamela O'Neill is DENIED; and Rinaldi's motion to exclude rebuttal expert Mandeep Trivedi is

DENIED.

## I. Background and Procedural History

Rinaldi was "the sales agent and brand ambassador" for Defendants Paul Goerg champagne ("Goerg champagne") pursuant to an oral agreement ("Agreement"). (Doc. 1 ¶ 1, Complaint.) Based upon the purported termination of this agreement, Rinaldi sought damages from Defendants for breach of contract, breach of fiduciary duty, tortious interference with contractual relations, unfair competition, unjust enrichment, and promissory estoppel. (*Id.* at ¶¶ 49–89.) Defendants bring counterclaims for breach of contract, breach of guarantor agreement, and breach of fiduciary duty against Rinaldi. (Doc. 39, Answer ¶¶ 141–63.) Additionally, Defendants bring a claim for breach of contract against Counterclaim Defendant USA Wines Imports, Inc. ("USA Wine") regarding a distribution agreement. (*Id.*)

On September 9, 2020, I issued an Opinion & Order on Defendants' motion for judgment on the pleadings, denying the motion as to Rinaldi's breach of contract claim, but granting it as to Rinaldi's claims for breach of fiduciary duty, tortious interference with contractual relations, unfair competition, unjust enrichment, and promissory estoppel. (Doc. 108.) Therefore, Rinaldi's only remaining claim before me is his breach of contract claim, and Defendants' four counterclaims remain.

In anticipation of trial, the parties filed motions *in limine*. (Docs. 116–124.) Rinaldi filed a motion seeking to preclude Defendants from offering at trial testimony or evidence questioning the validity and/or enforceability of the agreement at issue ("Rinaldi's Motion *in Limine* 1"), (Docs. 119–20); a motion to preclude Defendants from offering evidence relating to their breach of fiduciary duty claim ("Rinaldi's Motion *in Limine* 2") (Docs. 121–22); and a motion to preclude Defendants' proposed rebuttal expert Mandeep Trivedi ("Rinaldi's *Daubert* Motion")

(Docs. 123–24.)  Defendants filed a motion seeking to exclude evidence irrelevant to Rinaldi's breach of contract claim ("Defendants' Motion *in Limine* 1") (Doc. 117); an omnibus motion to exclude certain evidence and references ("Defendants' Motion *in Limine* 2") (Doc. 118); and a motion to exclude the testimony of Plaintiffs' testifying expert Pamela O'Neill ("Defendants' *Daubert* Motion") (Doc. 116.)

On July 15, 2021, I held a hearing on the parties' *Daubert* motions.  (*See* July 14, 2021 Minute Entry.)  I issued an oral ruling denying the parties' *Daubert* motions, and stated that a written ruling would be forthcoming.

## II.    Legal Standards

"The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial . . . . Evidence should not be excluded on a motion in limine unless such evidence is clearly inadmissible on all potential grounds."  *Doe v. Lima*, No. 14 CIV. 2953 (PAE), 2020 WL 4731418, at *3 (S.D.N.Y. Aug. 14, 2020) (citation omitted).  A court's ruling "is 'subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in a party's proffer.'"  *Id.* (quoting *Luce v. United States*, 469 U.S. 38, 41 (1984)).

Pursuant to Federal Rule of Evidence 401, evidence is "relevant" if "it has any tendency to make a fact more or less probable than it would be without the evidence" and that fact "is of consequence in determining the action."  Fed. R. Evid. 401.  Rule 403 authorizes a court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

> Federal Rule of Evidence 702 permits the admission of expert testimony as long as:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  "The fundamental requirements are thus that such evidence be relevant and reliable."  *United States v. Jones* 965 F.3d 149, 161 (2d Cir. 2020) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 587–92 (1993) ("*Daubert*"); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 152 (1999).

In *Daubert*, the Supreme Court held that the trial judge is responsible for "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  509 U.S. at 597.  Thus, "[w]hile the proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied, . . . the district court is the ultimate gatekeeper."  *Jones*, 965 F.3d at 161 (quoting *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (internal quotation marks omitted)).  To assist with the task of determining the reliability of expert testimony, *Daubert* provides the trial court with five non-exclusive factors to apply to the expert's reasoning or methodology:  (1) whether a theory or technique has been or can be tested; (2) "whether the theory or technique has been subjected to peer review and publication;" (3) the technique's "known or potential rate of error;" (4) "the existence and maintenance of standards controlling the technique's operation," and (5) whether the technique is generally accepted in the relevant scientific community.  *Daubert*, 509 U.S. at 593–94.  These factors do not constitute a "definitive checklist or test"; rather, "the inquiry envisioned by Rule 702 is . . . a flexible one."  *Id.*  "A district court's gatekeeping function applies not only to scientific opinion, but also to the opinions of other

4

experts," and the *Daubert* factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Auto. Ins. Co. of Hartford, Connecticut v. Electrolux Home Prod., Inc.*, No. 10-CV-0011 CS, 2012 WL 6629238, at *2 (S.D.N.Y. Dec. 20, 2012) (citation omitted).

As the Second Circuit has recognized, however, the inquiry under *Daubert* is limited, and "[a] minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion *per se* inadmissible." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002)). Rather, "[t]he judge should only exclude the evidence if the flaw is large enough that the expert lacks good grounds for his or her conclusions." *Id.* at 266–67 (citation omitted) (Rule 702 and *Daubert* mandate exclusion where "an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached").

"This limitation on when evidence should be excluded accords with the liberal admissibility standards of the federal rules and recognizes that our adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony." *Id.* at 267. "[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (citation omitted). At bottom, the *Daubert* analysis is intended to give the district court the discretion "needed to ensure that the courtroom door remains closed to junk science while admitting reliable expert testimony that will assist the trier of fact." *Id.*

### III. Discussion

#### A. *Rinaldi's Motion in Limine 1*

Rinaldi moves to preclude Defendants from offering any testimony or evidence concerning formation of a contract with Rinaldi or to otherwise contradict the validity or enforceability of the Agreement. (Rinaldi MIL 1.)[1] Rinaldi argues that Defendants have admitted to the existence of an oral agreement. (*Id.* at 1–3.) Additionally, he avers that I previously determined that "the parties agree that there is a valid and enforceable contract." (*Id.* at 2). Defendants respond that at "no point in this case has La Goutte acknowledged, admitted, or agreed that the business relationship with Plaintiff, which began in the mid-1990s, regarding sales of La Goutte's Paul Goerg brand champagne included any agreement on, or even the existence of, the terms that he now alleges as the basis of his breach of contract claim," and that these disputed terms are at the heart of Rinaldi's remaining claim. (Defendants' Opp. MIL 1, at 2.)[2]

At the outset, I note that although in my September 9, 2020 O&O on Defendants' motion for judgment on the pleadings, I stated "[t]he parties agree that there is a valid and enforceable contract," (Doc. 108, at 15), and cited to the complaint and answer, I also expressly noted that for purposes of ruling on that motion, I "assume[d] Plaintiff's allegations to be true and dr[ew] all reasonable inferences in his favor" and that "my references to these allegations should not be construed as a finding as to their veracity, and I ma[de] no such findings," (*id.* at 2 n.2). In other words, Plaintiff's reliance on my statements in the O&O are inappropriate in this context.

I understand Rinaldi's concern, especially considering the fact that Defendants

---

[1] "Rinaldi MIL 1" refers to Rinaldi's first motion *in limine*, filed on December 21, 2020. (Doc. 120.)

[2] "Defendants' Opp. MIL 1" refers to Defendants' opposition to Rinaldi's first motion *in limine*, filed on January 8, 2021. (Doc. 132.)

themselves are bringing a breach of contact action against Plaintiff, which appears to be based on the oral agreement.  (*See* Answer ¶¶ 141–45.)  In their answer, Defendants admit that "Rinaldi has previously been involved in the sale of Paul Goerg Champagne, which is highly regarded, pursuant to an oral agreement, originally with La Goutte, for which terms are to some extent evidenced by some writings together with the course of performance thereof."  (Answer ¶ 3.)  As part of their counterclaims, Defendants state that "Rinaldi owed contractual obligations to La Goutte and Prieur (evidenced by, amongst other things, his execution of the Guarantor Agreement, by course of performance, and by his pleadings in this action) to make payments for the products which La Goutte and/or Prieur shipped."  (Answer ¶ 127.)

What remains unclear and what is the crux of Rinaldi's remaining claim are the terms of this Agreement.  This evidence must be heard at trial to resolve Rinaldi's claim, and appears to be the sort of evidence that Defendants plan to offer, (*see* Defs.' Opp. MIL 1, at 8–9).  The parties are permitted to put forth evidence regarding the validity and enforceability of the specific terms of the Agreement that remain in question.  For these reasons, Rinaldi's first motion *in limine* is DENIED.

### B.  *Defendants' Daubert Motion*

Rinaldi claims $3,700,000 in compensatory damages, and at least €200,000 in unpaid commissions.  (*See* Doc. 114, Pre-Trial Order, at 10.)  In support of his compensatory damages, Plaintiff intends to offer the testimony of Pamela O'Neill, who calculated Plaintiff's damages using two approaches:  lost business opportunity and brand valuation.  (O'Neill Rep. 4.)[3]  O'Neill's lost business opportunity calculation relies on projections created by third-party investment bank Oberon Securities ("Oberon").  (*Id.* at 5.)  Oberon was retained by Plaintiff to

---

[3] "O'Neill Rep." refers to the expert report of Pamela O'Neill, dated November 20, 2018.

source capital for his proposed business that is referred to as MRC.  (*Id.* at 15.)  As Rinaldi indicated during oral argument, he formed this business based upon his continuing to sell Defendants' champagne brands.  The projections were created in 2015, and have not been updated or modified since.

Defendants move to exclude O'Neill's testimony on the grounds that O'Neill's testimony is not based on sufficient facts or data because (1) she relied primarily on projections made by Oberon that fail to take into account the relationship between Rinaldi and La Goutte; (2) O'Neill's testimony does not reliably apply accepted principles and methods to the facts of the case, as neither calculation is derived from data points attributable directly to the relationship between Rinaldi and La Goutte; and (3) neither "valuation of lost business opportunity" nor "brand valuation" could stem from an alleged breach of contract, as the parties could not have possibly contemplated the new business arrangement Rinaldi was seeking at the time he started doing business with La Goutte in 1994.  (Defs.' Daub. Mot. 4.)[4]  Rinaldi responds in part that Defendants' challenges go to the weight not admissibility of O'Neill's testimony and that her reliance on third-party projections is well founded.  (Rinaldi Daub. Opp. 4–6.)[5]

O'Neill has appeared as an expert in this District before.  In *International Cards Co., Ltd. v. MasterCard Int'l Inc.*, 13 Civ. 2576 (LGS), 2016 WL 7009016, at *1 (S.D.N.Y. Nov. 29, 2016), O'Neill sought to opine on a plaintiff's damages stemming from defendant's contract termination.  O'Neill offered testimony that due to defendant's termination of the contract with plaintiff, plaintiff's business ceased operating, which resulted in $30.7 million in damages, and

---

[4] "Defs.' Daub. Mot." refers to Defendants' motion to exclude O'Neill's testimony, filed on December 21, 2020. (Doc. 116.)

[5] "Rinaldi Daub. Opp." refers to Rinaldi's memorandum of law in opposition to Defendants' motion to exclude O'Neill, filed on January 8, 2021.  (Doc. 136.)

that plaintiff suffered $45.3 million in damages based on business opportunities that were not realized because of the contract termination, which was based in part on a discounted cash flow ("DCF") analysis. *Id.* Other than O'Neill's testimony related to damages amounts as to claims that were dismissed at summary judgment, Judge Schofield allowed O'Neill's testimony. *Id.* at 7. Similar to Defendants' argument here, the defendant in *International Cards* argued that O'Neill's DCF analysis was unreliable because it was based on cash flow projections prepared by a third party—the appraiser that plaintiff's largest shareholder commissioned annually. *See id.* at 6. Judge Schofield rejected this argument, explaining: "This argument is unavailing because 'an expert may rely on data that she did not personally collect.'" *Id.* (quoting *Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 94 (2d Cir. 2000)). Defendants correctly point out that in *International Cards*, Judge Scofield also considered that the "appraiser's projections ha[d] sufficient indicia of reliability" and O'Neill had been able to compare plaintiff's past performance with the projections for a given year. *Id.* (*See* Defs.' Daub. Mot. 7.)

      Defendants point to *Celebrity Cruises Inc. v. Essef Corp.*, 434 F. Supp. 2d 169, 182–83 (S.D.N.Y. 2006), where O'Neill sought to offer damages on lost profits and loss of business enterprise value stemming from an incident where passengers fell ill during a cruise. In assessing damages, O'Neill relied on projected growth rates—however, the actual growth rates were lower than what was predicted. *Id.* Even after becoming aware of the actual growth rates, O'Neill did not incorporate them into her analysis. *Id.* Magistrate Judge Francis excluded O'Neill on these grounds. *Id.* at 183. Judge Francis explained, "[the three cruise lines] all fell short of projections. Ms. O'Neill attributes their negative growth rates to a decline in demand. Yet she allocates virtually all of that decline in Celebrity's case to the Legionnaires' incident without making any effort to determine the cause of the decline for the two comparable lines."

*Id.* at 183. Although Defendants argue that O'Neill's testimony is akin to that in *Celebrity Cruises*, (Defs.' Daub. Reply 7)[6], I find that it is not. Here, unlike in *Celebrity Cruises*, there has not been direct evidence to contradict the projections upon which O'Neill relied or evidence that O'Neill ignored such contradictions.

O'Neill's opinion here falls somewhere between the opinions in *International Cards* and *Celebrity Cruises*. O'Neill did rely on certain historical information to render her projection, (*see* O'Neill Tr. 32–33)[7]; however, it does not appear to rise to the level of comparison she did in *International Cards*. Although O'Neill may not have extensive knowledge of the underlying assumptions she used to draft her report, as Defendants acknowledged at oral argument, it is fairly common practice for experts to rely on data from third parties and experts may rely on data, documents, and information that may not be admissible. "[A]n expert may rely on data that she did not personally collect." *International Cards*, 2016 WL 7009016, at *6.

Although I understand Defendants' concerns regarding O'Neill's testimony, many if not all of Defendants' objections to O'Neill's testimony go to weight not admissibility. Defendants will have the opportunity to challenge O'Neill's methods, including her reliance on Oberon's projections and her lack of knowledge of the relationship between Rinaldi and Defendants, during cross-examination. Defendants can also undermine her methods through Trivedi, their rebuttal expert. Additionally, as I noted during oral argument, I find that Defendants' remaining concerns, including whether Plaintiff's potential business was feasible or even contemplated by the contract, can be dealt with through cross examination of O'Neill and jury interrogatories. For these reasons, Defendants' motion to exclude O'Neill's testimony is DENIED.

---

[6] "Defs.' Daub. Reply" refers to Defendants' reply in support of their motion to exclude O'Neill's testimony, filed on January 19, 2021. (Doc. 140.)

[7] "O'Neill Tr." refers to the transcript of the deposition of O'Neill, taken on January 31, 2019.

### C. *Rinaldi's Daubert Motion*

Given that I have declined to exclude O'Neill's testimony, I now consider Rinaldi's motion to exclude Defendants' rebuttal expert, Mandeep Trivedi. Rinaldi moves to exclude Trivedi's testimony on the grounds that Trivedi's testimony exceeds the appropriate bounds of a rebuttal expert by opining on causation, and Trivedi fails to provide any supporting reasoning or methodology for her opinions. (Rinaldi Daub. Mot. 1.)[8]

First, at oral argument, Defendants conceded that it is not necessary for Trivedi to use the word "causation" when testifying. Trivedi is therefore precluded from using the term "causation" at trial absent a subsequent ruling. This should alleviate Rinaldi's concern that Trivedi is exceeding the scope of her role as a rebuttal damages expert.

Second, although a rebuttal expert "must meet *Daubert*'s threshold standards regarding the qualifications of the expert, sufficiency of the data, reliability of the methodology, and relevance of the testimony," a rebuttal expert has "no burden to produce models or methods of their own; they need only attack those of the plaintiffs' experts." *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016) (citation omitted); *see In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5, 29 (S.D.N.Y. 2020) ("A rebuttal expert, by nature, criticizes the methodology and/or opinions of another. There is no requirement that a rebuttal expert himself offer a competing analysis; his opinions may properly concern criticizing that presented by another party.") (collecting cases) (citation omitted).

Rinaldi argues that Trivedi improperly attacked the discount rate used by O'Neill without providing her own proper discount rate. (*See* Rinaldi Daub. Mot. 6–7.) Rinaldi's argument ignores the primary purpose of a rebuttal expert—to criticize another expert's opinion. As

---

[8] "Rinaldi Daub. Mot." refers to Rinaldi's motion to exclude Trivedi, filed on December 21, 2020. (Doc. 124.)

Rinaldi agreed at oral argument, Trivedi had no obligation to produce any methodology of her own. Moreover, as Defendants indicated, Trivedi does not intend to offer an alternate damages calculation of her own, but rather she will testify that the numbers do not support O'Neill's valuation. She also intends to testify, for illustrative purposes, that even if Oberon's numbers are used with a more appropriate discount rate, Rinaldi's damages would be zero. For these reasons, Plaintiff's motion to exclude Trivedi's testimony is DENIED.

## IV. Conclusion

For the foregoing reasons, Rinaldi's first motion *in limine* is DENIED; Defendants' motion to exclude the testimony of O'Neill is DENIED; and Rinaldi's motion to exclude Trivedi's testimony is DENIED.

The Clerk's Office is respectfully directed to terminate the motions pending at Documents 116, 119, and 123.

SO ORDERED.

Dated: September 30, 2021
      New York, New York

                                        Vernon S. Broderick
                                        United States District Judge